IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **ABDELKADER BRAHIM** <br> *Petitioner*, <br><br> v. <br><br><br> **WARDEN, FCI BERLIN,** in his official capacity as Warden; <br><br> **KRISTI NOEM,** i*n her official capacity as Secretary of Homeland Security*; <br><br> **TODD LYONS***, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement;* <br><br> **PAMELA BONDI,** *in her capacity as Attorney General for the United States,* <br><br> *Respondents*. | **CIVIL ACTION NO.: 1:26-cv-57** <br><br><br><br><br><br><br><br><br><br><br><br><br><br> **PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241** |

**Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241**

Introduction

1. Petitioner Abdelkader Brahim is an asylum seeker who was paroled into the United States on May 16, 2024, and thereafter lived in the U.S. while pursuing his asylum claim.

2. He is now unlawfully detained by U.S. Immigration and Customs Enforcement (ICE) at FCI Berlin in Berlin, New Hampshire.

3. This petition challenges his ongoing detention as violating federal law and the Fifth Amendment to the U.S. Constitution, and seeks relief under 28 U.S.C. § 2241. ICE is

1

detaining Petitioner under the wrong statutory authority – treating him as an "arriving alien" under 8 U.S.C. § 1225(b) – when in fact 8 U.S.C. § 1226(a) governs his detention. As a result, ICE has failed to provide the bond hearing that Congress and the Constitution require for detainees like Petitioner.

4. Petitioner respectfully requests that this Court declare his detention unlawful and order Respondents to provide an immediate individualized custody redetermination hearing ("bond hearing") at which the government must justify any further detention.

5. Petitioner asks that such a hearing be conducted within 7 days of the Court's order. If Respondents do not timely provide a bond hearing, Petitioner requests that the Court order his immediate release.

6. Petitioner also seeks any further relief the Court deems just and proper to remedy the ongoing violation of his rights.

**Jurisdiction and Venue**

7. This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is "in custody in violation of the Constitution or laws of the United States." Habeas corpus is the appropriate vehicle to challenge the legality of immigration detention.

8. The central question in a § 2241 habeas action is whether the detention violates U.S. law; here, Petitioner's detention squarely violates federal statute and the Fifth Amendment.

9. This Court also has jurisdiction under 28 U.S.C. § 1331, as Petitioner's claims arise under federal law, including the Immigration and Nationality Act (INA) and the U.S. Constitution. Petitioner additionally seeks declaratory and injunctive relief under 28 U.S.C.

§§ 2201–2202 (Declaratory Judgment Act) and 5 U.S.C. § 706 (Administrative Procedure Act), as appropriate, to vindicate his statutory and constitutional rights.

10. Venue is proper in the District of New Hampshire because Petitioner is currently detained in this District at FCI Berlin in Berlin, NH.

11. The immediate custodian of Petitioner – the person with day-to-day control over his detention – is within this Court's jurisdiction. Accordingly, venue lies in this District.

12. Petitioner has exhausted any available administrative remedies to the extent required, or such remedies are unavailable or futile. There are no adequate or accessible administrative avenues to challenge his unlawful detention.

13. Petitioner cannot seek a bond hearing through the immigration court system because DHS has categorized him as an "arriving alien" not entitled to bond consideration by an Immigration Judge. Petitioner, through counsel, requested release or a custody reclassification from ICE, but those requests have been ignored or denied.

**Parties**

14. Petitioner Abdelkader Brahim is a native of Mauritania who fled persecution and sought asylum in the United States. Petitioner was paroled into the United States on May 16, 2024 pending resolution of his immigration case. After living in the U.S. for about 17 months while pursuing asylum, Petitioner was suddenly re-arrested by ICE on October 2, 2025. He is currently detained at FCI Berlin in Berlin, New Hampshire (within ICE's Boston Field Office jurisdiction). Petitioner remains in removal proceedings and has a pending application for relief, yet he languishes in detention with no bond hearing.

15. Respondent Warden, FCI Berlin, is sued in his official capacity**,** is sued in his official capacity, Respondent Warden is responsible for oversight of detention decisions. He has direct authority over Petitioner's custody and over the facility or facilities where Petitioner is held.

16. Respondent Kristi Noem, sued in her official capacity as Secretary of the U.S. Department of Homeland Security (DHS), is responsible for enforcement of the immigration laws of the United States. This includes authority over the detention and release of noncitizens. DHS (through its sub-agency ICE) has ultimate custody of Petitioner. As DHS Secretary, Respondent Noem has supervisory authority over Petitioner's detention and is a proper respondent with the legal authority to order Petitioner's release.

17. Respondent Todd Lyons, sued in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement (ICE), is the head of the agency that currently detains Petitioner. ICE is the DHS component responsible for carrying out immigration custody and removal operations. Respondent Lyons oversees ICE's nationwide enforcement and removal activities, including those of the Boston Field Office that has custody of Petitioner. As the official in charge of ICE, Respondent Lyons has legal custody of Petitioner and the authority to produce him before the Court. Respondents Noem and Lyons are therefore the proper respondents to this habeas petition.

18. Respondent Pamela Bondi, Attorney General of the United States, is sued in her official capacity, Respondent Bondi is the head of the U.S. Department of Justice and the chief legal officer of the federal government. The Attorney General has ultimate authority over the interpretation and application of immigration laws and oversees the Executive Office

for Immigration Review (which includes the immigration courts). Respondent Bondi is named in her official capacity given the claims of violations of the Immigration and Nationality Act and the Constitution raised herein.

**Factual and Procedural Background**

19. Petitioner arrived in the United States on or about May 16, 2024 at the U.S.–Mexico border seeking asylum. He presented himself to U.S. immigration officers and expressed a fear of persecution in his home country.

20. After initial processing and a credible fear screening, the Department of Homeland Security exercised its discretion to grant Petitioner humanitarian parole into the United States under INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A).

21. This parole allowed Petitioner to enter and remain in the country on a temporary, conditional basis while his immigration case was pending.

22. Petitioner's parole was a conditional release permitting him to live in the community rather than in detention.

23. Importantly, under immigration law parole does not constitute an "admission" to the United States – Petitioner remained legally an "applicant for admission," but he was physically present in U.S. territory.

24. Petitioner was no longer at the border seeking initial entry; he was inside the United States and subject to the INA provisions governing persons already present in the country.

25. Following his parole into the U.S., Petitioner complied with all conditions imposed on him. He promptly pursued his claim for protection: Petitioner filed an asylum application (Form I-589) with U.S. Citizenship and Immigration Services.

26. DHS initiated standard removal proceedings under 8 U.S.C. § 1229a, wherein Petitioner could seek relief from removal. Specifically, DHS issued a Notice to Appear (NTA) placing Petitioner in removal proceedings and charging him as inadmissible.

27. The NTA alleged that Petitioner is an alien present in the United States without being admitted or paroled, under INA § 212(a)(6)(A)(i). Notably, the NTA did not classify Petitioner as an "arriving alien" – rather, it identified him as an alien present in the U.S. without admission, reflecting his status inside the country (as opposed to someone arriving at a port of entry.

28. Petitioner's removal case was docketed at an immigration court, and he began appearing at scheduled hearings.

29. Over the next year and a half, Petitioner pursued his asylum claim and complied with all immigration court requirements. He attended every hearing and check-in without incident. During this time, Petitioner lived peacefully in the community.

30. His removal proceedings, however, remained pending with no final resolution. As of late 2025, Petitioner was still awaiting an adjudication of his claims for relief. On December 1, 2025, an Immigration Judge granted Petitioner withholding of removal, recognizing that Petitioner faces a clear probability of persecution in his country of origin.

31. Petitioner reserved appeal of that decision (seeking fuller relief), so the Immigration Judge's order is not final. Petitioner's immigration case thus remains ongoing, and no final order of removal has been entered against him.

32. Petitioner was living in the United States in compliance with the law and court procedures, awaiting the adjudication of his applications for protection. He has no history of violence and had given the Government no reason to believe he posed a danger or flight risk.

33. By late 2025, Petitioner had even secured relief (withholding of removal) pending appeal – underscoring the legitimacy of his asylum claim and the likelihood that he will be allowed to remain in the U.S.

34. On October 2, 2025, ICE abruptly arrested Petitioner and took him back into custody, effectively terminating his parole.

35. Since ICE re-detained Petitioner on October 2, 2025, Petitioner was not afforded any hearing before or at the time of his re-detention, nor any prompt hearing after being taken into custody. He has had no chance to contest the basis for his detention or to argue that he can safely be released under appropriate conditions.

36. Under the INA's framework, 8 U.S.C. § 1226(a) (which applies to noncitizens already present in the U.S.) provides for discretionary detention "pending a decision on whether the alien is to be removed," and also expressly permits release on bond or conditional parole.

37. The implementing regulations contemplate that when ICE makes an initial custody determination or revokes a prior release, the detainee "may, at any time before an order of

removal becomes final, request a review of that determination by an Immigration Judge." See 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); 8 C.F.R. § 1003.19(c)-(d).

38. By classifying Petitioner as an "arriving alien," DHS has taken the position that Petitioner is not entitled to any bond hearing at all. Immigration Judges lack jurisdiction to conduct bond hearings for "arriving aliens" detained under 8 U.S.C. § 1225(b). Consequently, Petitioner's requests for a custody redetermination have been met with the response that no hearing is available in his case.

39. ICE's decision to treat Petitioner as an arriving alien has thus completely bypassed the normal process that § 1226 and its regulations would provide – namely, an individualized determination by a neutral adjudicator of whether detention is warranted.

40. Petitioner, through counsel, has exhausted all possible avenues to secure his release from custody. He has requested that ICE reconsider its decision and release him or at least reclassify his detention status so that he could seek a bond hearing.

41. These requests have been ignored or summarily denied. Because DHS insists that Petitioner is ineligible for bond consideration by an Immigration Judge, Petitioner has no administrative remedy to challenge his detention.

42. His only recourse is this habeas corpus action. Every additional day that Petitioner remains in jail without a hearing compounds the violation of his rights.

43. In sum, Petitioner's continued detention is unauthorized and unconstitutional. DHS's actions have placed Petitioner in a legal limbo: he is being held in what amounts to

mandatory detention under 8 U.S.C. § 1225(b), even though his situation squarely falls under 8 U.S.C. § 1226(a), which would entitle him to a bond hearing and possible release.

44. This statutory misclassification has stripped Petitioner of the process Congress provided and has resulted in a denial of due process under the Fifth Amendment. Petitioner now seeks relief from this Court to correct these violations.

**Grounds for Relief**

**Claim I:** *Unlawful Detention Under the INA – Petitioner Is Detained Under 8 U.S.C. § 1226(a), Not Subject to Mandatory Detention as an "Arriving Alien"*

45. Petitioner's continued detention is not authorized by law. Respondents are holding Petitioner as if he were subject to mandatory detention under 8 U.S.C. § 1225(b) (the provision governing certain aliens stopped at the border or at a port of entry), yet Petitioner in fact falls under 8 U.S.C. § 1226(a) – the statute that governs detention of noncitizens already present in the United States.

46. Under the correct provision (§ 1226(a)), Petitioner's detention is discretionary and he is entitled to an individualized bond hearing. The government's failure to recognize this and provide such a hearing renders his detention unlawful.

47. The statutory framework of the INA makes clear that § 1226, not § 1225, applies to someone in Petitioner's circumstances. Section 1226 generally governs the arrest and detention of noncitizens already inside the United States pending removal proceedings, while § 1225(b) governs the treatment of aliens who are stopped at the border or seeking initial admission.

9

48. By contrast, § 1225(b) applies to a limited subset of "applicants for admission" who are "seeking admission" at a port of entry and whom immigration officers decide to refer for inspection or expedited removal.

49. The text of the statutes and relevant regulations confirms this interpretation. Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission" and "seeking admission", if the examining officer determines the person is not clearly and beyond a doubt entitled to enter, the alien "shall be detained" for removal proceedings.

50. The mandatory "shall" in § 1225(b)(2)(A) is subject to one narrow exception – DHS's discretionary authority to parole the individual into the U.S. under § 1182(d)(5)(A). Other than this limited parole exception, detention under § 1225(b)(2) is considered mandatory for those to whom it applies.

51. Respondents contend that Petitioner fits this framework simply because he has never been formally "admitted" to the U.S. (having entered on parole). In their view, any non-admitted person remains an "applicant for admission" subject to § 1225(b) custody, no matter how long he has been in the country.

52. However, Respondents' position ignores the critical statutory phrase "seeking admission." Section 1225(b)(2)(A) applies only to an alien who (1) is an "applicant for admission" and (2) is "seeking admission." 8 U.S.C. § 1225(b)(2)(A).

53. Petitioner may technically remain an "applicant for admission" in the legal sense (because his parole did not count as an admission), but he is not currently "seeking" admission – he is already physically inside the United States, awaiting the outcome of his removal case. As the Supreme Court noted in Jennings, § 1226 is the provision that "generally governs"

the detention of persons in Petitioner's situation, i.e. those "already entered" into U.S. territory and facing removal proceedings.

54. The inclusion of the term "seeking admission" in § 1225(b)(2)(A) must be given meaning; it denotes an active attempt to enter the country at the border or port of entry, not someone like Petitioner who has been living in the U.S. for many months after being paroled in.

55. If Congress intended § 1225(b)(2)(A) to apply to all applicants for admission regardless of context, it would not have needed to include the additional qualifier "seeking admission"

56. DHS's own regulations further bolster Petitioner's position. The term "arriving alien" is defined by regulation to mean "an applicant for admission coming or attempting to come into the United States at a port-of-entry" (with certain diplomatic exceptions). 8 C.F.R. § 1001.1(q); 8 C.F.R. § 1.2 (similar definition). In other words, an "arriving alien" in DHS's regulatory parlance is essentially synonymous with an alien encountered at a port-of-entry at the time of attempted entry.

57. Petitioner, by contrast, has been in the U.S. since May 2024. He is not "attempting to come" into the U.S. – he came in and was paroled over a year ago. While it is true that, legally, parole meant he was not "admitted," the relevant point is that his detention now is occurring well after his entry, as he awaits the conclusion of removal hearings. DHS's regulations recognize that such a person is not an "arriving alien" in the sense relevant to § 1225(b) custody.

58. Indeed, the regulations governing custody determinations explicitly withhold jurisdiction from Immigration Judges over "arriving aliens", but allow IJ review for "aliens present in

the United States who have not been admitted or paroled" (which describes Petitioner's charging designation). See 8 C.F.R. § 1003.19(a)-(h).

59. This framework presumes that many aliens who were not admitted (e.g. those who entered without inspection) will nonetheless be eligible for bond under § 1226, unless they fall into the narrow "arriving" category of individuals literally at the threshold of entry.

60. Petitioner's circumstance – paroled into the interior and later detained during removal proceedings – does not fit the intended scope of § 1225(b)'s mandatory detention.

61. The historical understanding of immigration law aligns with Petitioner's argument. For decades, courts have drawn a fundamental distinction between those aliens who are stopped at the border seeking initial entry, and those who have already entered U.S. territory (even if unlawfully).

62. DHS itself initially treated Petitioner as a § 1226 detainee, not a § 1225 arriving alien. In similar cases, the Government's own paperwork has acknowledged the applicability of § 1226 for parolees like Petitioner.

63. In Petitioner Brahim's case, upon his May 2024 arrival, DHS similarly exercised its parole discretion under § 1182(d)(5) to let him live free while his case was pending. The charging document (NTA) issued to Petitioner reflected the reality that he was an alien present in the U.S. without admission not an "arriving" alien at a port.

64. Moreover, ICE evidently deemed Petitioner suitable for release into the community under supervision – consistent with a § 1226(a) custody determination. It is only now, after deciding to revoke his parole and re-detain him in 2025, that Respondents have shifted to

the litigation-driven position that Petitioner should retrospectively be treated as an "arriving alien" subject to mandatory lockup.

65. The Government's about-face underscores the arbitrariness of its stance. The Court should not countenance such a post hoc reclassification that contradicts the statutory scheme and deprives Petitioner of important rights.

66. In sum, Petitioner is being detained under the wrong statute. By law, his detention after parole falls within 8 U.S.C. § 1226(a). Under § 1226(a), the Attorney General (through DHS/ICE) has discretion to detain or release a noncitizen pending removal.

67. Critically, § 1226 and its regulations entitle the detainee to a bond hearing in front of an Immigration Judge for a neutral determination of whether detention is necessary. Petitioner's detention should have been handled under this framework – meaning he was eligible for a custody redetermination by an Immigration Judge, with the possibility of bond or conditional parole.

68. Instead, Respondents have misclassified him as an unbondable "arriving alien" under § 1225(b), thereby denying him the process and opportunity for release that Congress provided in § 1226(a).

69. Because Respondents have never provided Petitioner the custody hearing that the correct statute (§ 1226(a)) provides, his detention violates the INA and is ultra vires. Respondents' actions are not in accordance with law and amount to detention without statutory authority: detaining Petitioner under a mandatory scheme that simply does not apply to him.

**Claim II:** *Violation of the Fifth Amendment – Detention Without a Bond Hearing or Due Process*

70. Respondents' actions also violate Petitioner's rights under the Due Process Clause of the Fifth Amendment. The Fifth Amendment guarantees that no person shall be deprived of liberty without due process of law – this protection extends to all "persons" on U.S. soil, including noncitizens, regardless of immigration status. Petitioner, as an individual who has physically entered the United States and lived here for well over a year, is indisputably entitled to the protection of constitutional due process in any deprivation of his liberty.

71. Freedom from bodily restraint lies at the core of the liberty interest that due process protects. When the Government seeks to imprison or detain someone, it must afford fundamental procedural fairness.

72. The essence of due process is that a person in jeopardy of serious loss (such as loss of freedom) must be given notice of the reasons and an opportunity to be heard on the propriety of their continued detention.

73. These principles apply with full force to civil immigration detention. It is well established that "aliens who have entered the United States" – even if not lawfully admitted – possess due process rights with respect to restraints on their liberty.

74. At minimum, due process requires an individualized determination of the necessity of detention.

75. Even where the statutory scheme grants the Government discretion to detain, due process demands that the Government actually exercise that discretion in a rational manner – i.e., that some individualized consideration be given to whether detention is justified for a particular person.

76. Here, no such consideration has been given to Petitioner. By detaining Petitioner for an extended period with no hearing and no opportunity to be heard, Respondents have run roughshod over basic due process requirements.

77. The Government has provided Petitioner with no process at all to contest his imprisonment. ICE officers summarily arrested him without warning on October 2, 2025.

78. After locking him up, Respondents have likewise provided no post-deprivation process: Petitioner has never been brought before any judge or neutral decision-maker to review his custody. This total absence of procedure is constitutionally indefensible.

79. By categorically denying Petitioner a bond hearing, Respondents have ensured that no one has ever evaluated whether his detention is necessary or justified.

80. Petitioner has never been alleged to be dangerous, nor has any official ever determined that he poses a flight risk that could not be mitigated by supervision or conditions of release.

81. Yet the Government insists on jailing him for a prolonged period without even asking the question of whether less restrictive alternatives could suffice. This kind of arbitrariness offends due process.

82. When the Government constrains a person's liberty, due process requires a meaningful opportunity for the person to demonstrate that detention is unwarranted. Here, Petitioner was given no opportunity whatsoever to make such a showing.

83. The Fifth Amendment's guarantee of due process protects against arbitrary detentions of this nature. It prohibits jailing a person without fair procedures to decide the legality and necessity of detention.

84. Petitioner's ongoing imprisonment – effected solely by an executive reclassification that deems him unbondable – amounts to a "black box" detention: no hearing, no findings, and no judicial oversight.

85. Such detention bears the hallmark of unconstitutionality. It is prolonged, potentially indefinite (given the backlogs and the pending appeals in his immigration case), and entirely lacking in procedural safeguards. Simply put, Due Process was violated when ICE re-detained Petitioner without affording him any opportunity to challenge that decision.

86. Every day that he remains locked up without a chance to appeal for his freedom compounds the constitutional injury. This Court's intervention is warranted to restore due process by ensuring Petitioner gets a hearing or is released.

87. In analogous cases, federal courts have not hesitated to find due process violations where noncitizens are detained for months without a bond hearing.

88. The Constitution requires at least a basic level of procedure – an impartial decision-maker and an opportunity to contest the grounds for custody – when the Government takes away an individual's freedom. Because that did not occur in Petitioner's case, his detention is unconstitutional.

89. In sum, Respondents' ongoing detention of Petitioner without any opportunity to be heard violates the Fifth Amendment. The appropriate remedy for this due process violation is release or, at a minimum, an immediate bond hearing to rectify the lack of procedure.

90. A bond hearing would provide the forum that Petitioner has been denied – a chance to have his detention reviewed and to secure release if he poses no flight risk or danger.

91. While such a hearing should have been provided as a matter of course under the statute, it is also compelled now as a matter of constitutional due process. Petitioner respectfully asks this Court to order that remedy.

**Prayers for Relief**

WHEREFORE, Petitioner Abdelkader Brahim respectfully requests that this Court enter judgment in his favor and grant the following relief:

A. Declare that Petitioner's continued detention without an individualized bond hearing is unlawful, in violation of the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. In particular, declare that Petitioner is detained under 8 U.S.C. § 1226(a) and is entitled to a prompt custody hearing, and that DHS's treatment of Petitioner as an unbondable "arriving alien" under 8 U.S.C. § 1225(b) is improper and contrary to law.

B. Issue a writ of habeas corpus or an injunction directing Respondents to promptly provide Petitioner with a lawful custody redetermination hearing. Specifically, order that Respondents must present Petitioner before an Immigration Judge (or other neutral adjudicator) for a bond hearing within 7 days of the Court's order. At that hearing, the Government should bear the burden to justify Petitioner's continued detention, and the adjudicator should have authority to order Petitioner's release on appropriate conditions if Petitioner does not pose a flight risk or danger. If Respondents fail to provide such a hearing within the prescribed time, order Petitioner's immediate release from custody.

C. Grant any other and further relief that the Court deems just and proper, including (if warranted by Respondents' non-compliance or the interests of justice) an order for

Petitioner's outright release from custody during the pendency of his removal proceedings, and any necessary orders to ensure compliance with the Court's judgment.

*Dated:* January 28, 2026                                      Respectfully submitted,


                                                               */s/ Maeve Healy*
                                                               Maeve Healy, Esq.
                                                               Brooks Law Firm
                                                               10 High Street, Suite 3
                                                               Medford, MA 02155
                                                               Email: maeve@brookslawfirm.com
                                                               NH BBO: 279462



                                                               */s/Rafael Urena*
                                                               Rafael Urena, Esq.
                                                               **URENA & ASSOCIATES PLLC**
                                                               42 West St. Suite 136
                                                               Brooklyn, NY 11222
                                                               Phone: (703) 989-4424
                                                               Email: ru@urenaesq.com
                                                               *Lead Counsel for Petitioner*